# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-021**

**Filing Date: February 15, 2021**

**No. A-1-CA-37320**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHAD IAN WILLIAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Certiorari Denied, March 31, 2021, No. S-1-SC-38732. Released for Publication July 20, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Chad Williams appeals the district court's order revoking probation and ordering his commitment to the department of corrections. On appeal, Defendant argues: (1) the district court abused its discretion in concluding his probation violation was willful; (2) he was denied a right to allocution during the probation violation hearing; (3) the district court illegally sentenced him to more than five years of probation; (4) he was prohibited from presenting witness testimony during the probation violation hearing;

and (5) he was deprived effective assistance of counsel. We hold Defendant had the right to allocution at his probation violation hearing and that the district court did not afford him that right. Accordingly, we reverse in part and remand for resentencing, but otherwise affirm.

**BACKGROUND**

{2}   Defendant pled guilty to residential burglary, contrary to NMSA 1978, Section 30-16-3(A) (1971), two counts of receiving stolen property (over $2,500), contrary to NMSA 1978, Section 30-16-11(G) (2006), receiving or transferring a stolen motor vehicle, contrary to NMSA 1978, Section 30-16D-4(A) (2009), battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971), and larceny, contrary to NMSA 1978, Section 30-16-1 (2006). At the initial sentencing, the district court suspended Defendant's entire sentence and placed him on supervised probation for a total of nine years. As part of his conditions of probation, Defendant was required to get permission from his probation officer before leaving the county, follow all orders and instructions of his probation officer, and not buy, sell, or consume illegal drugs.

{3}   During the six months prior to the probation violation at issue in this case, Defendant had numerous violations of probation. Defendant tampered with his GPS monitor in April 2017, and he tested positive for methamphetamine on June 27, 2017, and again on July 30, 2017. The probation violation hearing for these alleged violations was held on August 24, 2017, and Defendant pled no contest to all the violations. After the district court expressed concern about Defendant's failure to engage in substance abuse treatment, Defendant responded that treatment programs were "a joke" and stated that rather than treatment he would "bareknuckle it." At the August 2017 hearing, the district court reinstated Defendant's probation despite Defendant's reluctance to complete a substance abuse treatment program.

{4}   Approximately a month later, on September 27, 2017, the State filed a petition to revoke probation and alleged that Defendant failed to adhere to his curfew and used illegal drugs, in violation of the conditions of his probation. The district court held a probation violation hearing to determine whether Defendant violated the conditions of his probation. The State presented the testimony of the probation officer assigned to Defendant's case, who testified that on September 9, 2017, Defendant was outside of Lea County, his county of residence, after his 9:00 p.m. curfew. The State also presented testimony from Defendant's probation officer that Defendant admitted to using methamphetamine. Defendant testified, admitting to his use of methamphetamine during the same trip that led to the curfew violation. Defendant also testified at length about his desire to address his substance abuse issues. Defendant explained that he applied and was accepted to the Fourth Dimension Oxford House in Austin, Texas, for substance abuse treatment. Further, Defendant testified he "decided that [he] is going to get clean off of drugs, and that [he does] want a life, and that [he does] want to make his family happy." Before Defendant had a chance to elaborate further on his desire to get clean, the district court stated, "We are not to sentencing right now, let's just move on to something else." After the defense rested, but prior to the district court's ruling on

whether Defendant violated his conditions of probation, the district court allowed Defendant to speak. The exchange was as follows:

| | |
|---|---|
| Court: | Mr. Williams do you have anything to say? |
| Defendant: | As far as the, well I just want to admit. I have always admitted that I used meth, every time I went in there . . . and I turned myself in Mr. Clingman [district court judge] the last two times knowing I was going to jail. I went there because I am trying to handle this. I really am. And I'm sorry that . . . I wanted to bare knuckle everybody. The last time I was in here before you . . . I was confident. And I did think that I could do it. But the fact of the matter is Mr. Clingman, I failed miserably. |
| Court: | Be that as it may, you violated your probation. You got a travel permit; you didn't go where you said you were going to go. You didn't come back on time. And you smoked meth while you were at it. That violates your probation. We are not debating this, that is the rule of the court. |
| Defendant: | Alright. |
| Court: | Set this matter for disposition, we are ready to go right now. |

{5}     After hearing argument from the prosecutor and Defendant's attorney, the district court proceeded to disposition, revoked Defendant's probation for all six convictions, and sentenced Defendant to approximately eight years of confinement in the department of corrections. After the district court announced its disposition, the following exchange occurred:

| | |
|---|---|
| Defendant | May I say something? |
| Court | No, get him out of here right now. |
| Defendant | Do I go to prison on all the cases or just . . . [inaudible] . . .? |
| Court | All of them, every one of them. |

The district court entered orders revoking Defendant's probation in all of his cases. This appeal followed.

**DISCUSSION**

**I.     Sufficient Evidence Supports the District Court's Finding That Defendant Willfully Violated the Condition of His Probation Prohibiting Drug Use**

**{6}**     Defendant argues the district court abused its discretion in concluding that he violated the conditions of his probation because his failure to comply with his curfew was not willful. "We review a district court's decision to revoke probation under an abuse of discretion standard. To establish an abuse of discretion, it must appear that the district court acted unfairly or arbitrarily or committed manifest error." *State v. Green*, 2015-NMCA-007, ¶ 22, 341 P.3d 10 (alterations, internal quotation marks, and citation omitted). We view "the evidence in a light most favorable to the [s]tate and indulg[e] all reasonable inferences in favor of the [district] court's judgment." *State v. Erickson K.*, 2002-NMCA-058, ¶ 21, 132 N.M. 258, 46 P.3d 1258. In a probation violation hearing, "the [s]tate bears the burden of establishing a probation violation with a reasonable certainty." *State v. Leon*, 2013-NMCA-011, ¶ 36, 292 P.3d 493, "The proof necessary is that which inclines a reasonable and impartial mind to the belief that the defendant has violated the terms of probation." *State v. Martinez*, 1989-NMCA-036, ¶ 4, 108 N.M. 604, 775 P.2d 1321. The violation must entail "willful conduct on the part of the probationer[.]" *In re Bruno R.*, 2003-NMCA-057, ¶ 11, 133 N.M. 566, 66 P.3d 339. When a "violation of probation is not willful, but resulted from factors beyond a probationer's control, probation may not be revoked." *Id.* ¶ 13.

**{7}**     Here, the district court found that Defendant violated his probation by failing to adhere to his probation officer's prescribed curfew, and because Defendant used methamphetamine. While Defendant contends there was insufficient evidence that he willfully violated his curfew, he does not challenge the sufficiency of the evidence to support the drug use violation. Based on our review of the record, there was sufficient evidence supporting the district court's finding of illicit drug use. Defendant signed a written admission form stating that he used methamphetamine on September 9, 2017, the day of the trip that led to the alleged curfew violation. Defendant further admitted to using methamphetamine when he testified unequivocally, "Yes sir I did. I admit it every time when I showed up and I was dirty." The State's presentation of his signed admission form as well as his own admittance to using methamphetamine support the district court's finding that Defendant possessed and consumed methamphetamine. Because substantial evidence supports the finding that Defendant violated the conditions of his probation by using methamphetamine, we need not address the district court's finding with respect to the curfew violation. *See Leon*, 2013-NMCA-011, ¶ 37 ("[A]lthough [a d]efendant challenges the sufficiency of the evidence supporting each of his violations, if there is sufficient evidence to support just one violation, we will find the district court's order was proper."). We hold that the district court did not abuse its discretion by finding that Defendant willfully violated the condition of his probation.

**II.     The District Court Failed to Afford Defendant a Right to Allocution During the Probation Violation Hearing**

**{8}** At the crux of this case is whether a defendant has a right to allocution in a probation violation hearing. Defendant argues that he was entitled to this right during the hearing and that the district court deprived him of that right. The State contends that New Mexico does not extend the right to allocution to probation violations involving imposition of a suspended sentence, that Defendant failed to preserve his argument, and that there is no due process right to allocution. We are persuaded by Defendant's argument and hold that Defendant had a right to allocution during the probation violation hearing and that the district court did not afford him that right.

**{9}** Allocution, also known as the doctrine of allocutus, is "the formal inquiry or demand made by the court . . . to [the] accused at the time of pronouncing a sentence as to whether [the] accused has anything to say why sentence should not be pronounced[.]" *State v. Setser*, 1997-NMSC-004, ¶ 20, 122 N.M. 794, 932 P.2d 484 (internal quotation marks and citation omitted). "Allocution is a peculiar right. In a sense, it is the right to be advised of another right." *Id*. (internal quotation marks and citation omitted). Allocution originated in the common law and afforded "a defendant who did not have the benefit of counsel and who could not present evidence . . . the opportunity to state why the court should not impose the death penalty." *State v. Stenz*, 1990-NMCA-005, ¶ 18, 109 N.M. 536, 787 P.2d 455 (citing *Tomlinson v. State*, 1982-NMSC-074, ¶ 5, 98 N.M. 213, 647 P.2d 415). The practice has continued in modern day with a "focus on tailoring punishment to individual circumstances, providing an avenue through which a defendant may ask for mercy based on factors that might not otherwise be brought to the court's attention, and promoting safety, certainty and equity in sentencing and the judicial process overall." *State v. Strickland*, 703 A.2d 109, 112 (1997). "Allocution ensures that sentencing reflects individualized circumstances, while maximizing the perceived equity of the process." 24 C.J.S. *Criminal Procedure and Rights of Accused* § 2256 (2021); *see also Strickland*, 703 A.2d at 113 (stating "[a]llocution provides a defendant the opportunity to meaningfully participate in the sentencing process and to show that he or she is a complex individual and not merely an object to be acted upon." (internal quotation marks and citation omitted)).

**{10}** Our Supreme Court first determined that a defendant has a right to allocution in its interpretation of NMSA 1978, Section 31-18-15.1 (2009). *See Tomlinson*, 1982-NMSC-074, ¶¶ 9, 11-13. Section 31-18-15.1 states the district court "shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist and take whatever evidence or statements it deems will aide it in reaching a decision[.]" In *Tomlinson*, our Supreme Court presumed "that the Legislature was aware of the common law doctrine of allocutus when it enacted Section 31-18-15.1" and as such, held a defendant has a right to allocution, even though the right is not specifically set forth by the plain language of Section 31-18-15.1. *Tomlinson*, 1982-NMSC-074, ¶¶ 9-12. The Court reasoned, "There is no substitute for the impact on sentencing which a defendant's own words might have if he [or she] chooses to make a statement." *Id*. ¶ 11 (alteration, internal quotation marks, and citation omitted). The Court thus recognized that the right of allocution extended to sentencing for all non-capital felonies. *Id*. ¶ 12. In *Tomlinson*, although the district court allowed the defendant to speak after it imposed a sentence, our Supreme Court concluded that it was "no more than an empty gesture."

*Id.* ¶ 11. The Court reversed the defendant's conviction and remanded for resentencing to afford the defendant a right to allocution. *Id.* ¶¶ 12-13.

**{11}** We further recognized the "symbolic and practical significance" of the right by extending it to habitual offender proceedings in *State v. Leyba*, 2009-NMCA-030, ¶ 27, 145 N.M. 712, 204 P.3d 37 (internal quotation marks and citation omitted); *see id.* ¶ 27 (rejecting the state's argument that the right to allocution did not apply because a district court had no sentencing discretion in habitual offender proceedings); *see also* NMSA 1978, § 31-18-17 (2003) (requiring a court to enhance a sentence when a person convicted of a non-capital felony qualified as a "habitual offender"). Furthermore, we reaffirmed the importance of the right to allocution by concluding that the "children's court should offer a child the opportunity to address the court before pronouncing [a] sentence." *State v. Ricky G.*, 1990-NMCA-101, ¶ 13, 110 N.M. 646, 798 P.2d 596.

**{12}** Here, as in *Leyba* and *Ricky G.*, Defendant claims the right to allocution extends beyond the initial sentencing phase, because allegations that Defendant violated the conditions of his probation subjected him to the possibility that his probation would be revoked and his original sentence imposed. A probation violation hearing contains aspects of sentencing similar to an original sentencing hearing at issue in *Tomlinson* as well as a habitual offender proceeding at issue in *Leyba*. In a probation violation hearing, the district court has a multitude of options in sentencing, all of which have the potential to impact a defendant's liberty interests. *See* NMSA 1978, § 31-21-15(B) (2016) ("If the [probation] violation is established, the court may continue the original probation or revoke the probation . . . or require the probationer to serve the balance of the sentence imposed or any lesser sentence."); *accord State v. Mares*, 1994-NMSC-123, ¶ 11, 119 N.M. 48, 888 P.2d 930 (recognizing that Section 31-20-5 does not require "the trial court to impose incarceration if the defendant violates the conditions of his [or her] probation"). In this regard, the opportunity for a defendant to address the judge retains the same practical significance as it would in the original sentencing hearing. Indeed, "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States*, 365 U.S. 301, 304, (1961) (plurality opinion). Allowing a defendant to address the district court prior to sentencing in a probation violation hearing also achieves the symbolic purposes of allocution described above. *See Tomlinson*, 1982-NMSC-074, ¶ 11; *see also Leyba*, 2009-NMCA-030, ¶ 27 (holding the right to allocution applies in a habitual offender proceeding despite the limited sentencing discretion of the district court). We therefore hold that a defendant has a right to allocution in a probation violation hearing.[1]

---

[1] Our holding is consistent with other jurisdictions that have extended the right to allocution to situations in which a court executes or imposes an original sentence following a probation revocation. *See, e.g.*, *Strickland*, 703 A.2d at 117 (recognizing a right to allocution at probation violation hearings and noting the right promotes "fair standards of procedure, individualized and equitable sentencing, and the perception of fairness in the judicial system overall"); *Sellman v. State*, 423 A.2d 974 (Md. Ct. Spec. App. 1981) (extending the right to allocution to probation violation hearings where an original sentence is executed). Some states do not afford a defendant a right to allocution when there is an execution of an original sentence and only afford that right when the sentence is new or deferred. *See State v. Nez*, 950 P.2d

**{13}** Having concluded Defendant had the right to allocution, we now determine whether the district court afforded him that right. Almost immediately after finding that Defendant violated the conditions of his probation and without advising Defendant he had the right to speak, the district court proceeded to disposition. The court exercised its discretion to revoke Defendant's probation and executed Defendant's original sentence in full, stating, "Your probation will be revoked in all cases; you'll do your time in the department of corrections." By failing to advise Defendant that he had the right to personally address the court before the court proceeded to disposition, the court denied Defendant his right of allocution.[2]

**{14}** The State argues that Defendant did nothing to indicate that he wished to speak before the disposition and that his request to say something after the court announced its disposition was only an expression of desire "to ask a question[.]" Nevertheless, whether a defendant's right of allocution is violated is not contingent on whether he or she asks for permission to speak or otherwise makes clear that he or she wishes to speak. It is the duty of the court to inform a defendant of his or her right to allocution, and when, as in this case, the district court does not fulfill this duty, the sentence is invalid. *See Tomlinson*, 1982-NMSC-074, ¶¶ 11-12 (rejecting the state's argument that "failure to permit the defendant to speak before sentence is imposed is harmless error" because a failure to offer the right to allocution "renders the sentence invalid"); *Ricky G.*, 1990-NMCA-101, ¶ 7 ("[We have] explicitly interpreted *Tomlinson* to require that a defendant be invited to address the court directly."); *Setser*, 1997-NMSC-004, ¶ 20 ("[I]n cases involving felony convictions, the trial judge must give the defendant an opportunity to speak *before* he pronounces sentence." (internal quotation marks and citation omitted)). In this case, the district court only invited Defendant to speak during the phase of the proceedings that pertained to whether Defendant had committed the alleged probation violations and never advised him of his right to address the court during the disposition. We hold that this violated Defendant's right to allocution, and we

---

1289, 1298 (Idaho Ct. App. 1997) (concluding that a right to allocution exists when a sentence is new or deferred, but not when a trial court reinstates a previous sentence); *see also Vicory v. State*, 802 N.E. 2d 426, 430, (Ind. 2004) (holding that a defendant has a right to allocution prior to a new sentence). Given the importance of providing defendants equitable procedures in all aspects of sentencing and the practical and symbolic significance of allocution under New Mexico law, we adopt the view that the right to allocution applies even when an original sentence is executed.

2We note that Defendant filed a motion for reconsideration of the sentence on March 19, 2018. The district court held a hearing on Defendant's motion, wherein Defendant requested that he be allowed to enter a treatment program for substance abuse; the district court denied Defendant's motion. In its answer brief, the State argues that during the hearing, "Defendant had and exercised ample opportunities to express any and all arguments and reasons for mitigation in the [d]istrict [c]ourt's disposition." Aside from this one statement, the State failed to further develop an argument and altogether failed to cite any authority supporting its contention that the hearing on Defendant's motion for reconsideration potentially cured the error at the probation violation hearing. Accordingly, we decline to address this argument further. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."); *see also In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that issues raised in appellate briefs which are unsupported by authority will not be reviewed on appeal).

accordingly reverse and remand for the district court to hold a new hearing to determine an appropriate disposition for the probation violation.[3]

## III.    Witness Testimony at the Probation Violation Hearing

**{15}**    Defendant argues his constitutional right to due process was violated by the district court's refusal to allow him to present his mother as a witness during the probation violation hearing. The State contends that Defendant failed to preserve his due process argument during the disposition phase of the probation violation hearing. We agree with the State.

**{16}**    Defendant claims he preserved his argument when he attempted to call his mother as a witness at the end of the evidentiary phase of the probation violation hearing. Defendant wished to have his mother testify that she could provide financial assistance for him to enter a residential treatment program. Based on our review of the record, the district court did not allow his mother to testify as to whether Defendant violated his probation because his mother's testimony did not have "anything to do with the violation." The district court concluded that the proffered testimony had no bearing on whether Defendant violated curfew or used methamphetamine. When the district court proceeded to the disposition phase—sentencing Defendant on the probation violation—Defendant did not request that his mother be permitted to provide a statement. And Defendant did not object on due process grounds at any time during the probation violation hearing.[4] Rule 12-321(A) ("To preserve a question for review it must appear that a ruling or decision by the [district] court was fairly invoked."); *see State v. Riley*, 2010-NMSC-005, ¶ 24, 147 N.M. 557, 226 P.3d 656 ("[A]n objection must be made with sufficient specificity to alert the mind of the trial court to the claimed error[.]" (internal quotation marks and citation omitted)). Defendant failed to preserve his due process argument below, and hence, we will not address it on appeal. *See State v. Sandoval*, 2003-NMSC-027, ¶ 16, 134 N.M. 453, 78 P.3d 907 (declining to address an unpreserved argument on appeal).

## IV.    Ineffective Assistance of Counsel Claim

**{17}**    Lastly, Defendant argues he was deprived effective assistance of counsel when his attorney did not move to withdraw his plea after the district court imposed a

---

3Defendant additionally argues that the district court abused its discretion at his initial sentencing by sentencing him to more than five years of probation, contrary to NMSA 1978, Section 31-20-5(A) (2003) (providing that "the total period of probation for the district court shall not exceed five years"). While the State agrees Defendant's initial sentence to more than five years of probation was error, the State argues that the legality of Defendant's initial probationary sentence is moot because Defendant is no longer on probation. Because we are remanding for a new hearing on the appropriate disposition for the probation violation, we do not decide the issue of whether Defendant's initial sentence was in error. *See State v. Favela*, 2013-NMCA-102, ¶ 13, 311 P.3d 1213 ("[A] reviewing court generally does not decide academic or moot questions[.]" (internal quotation marks and citation omitted)). We do, however, share the parties' concerns about Defendant's initial sentence and trust the district court to proceed with caution on remand.
4In addition, Defendant does not argue fundamental error on appeal and fails to develop an argument on that basis, thus we decline to address it. Rule 12-321(B)(2)(c) NMRA (recognizing that appellate courts have discretion in addressing issues involving fundamental error).

sentence of probation during the initial sentencing. Defendant also argues he was prejudiced by entering into the plea agreement because "his lawyer told him that he would be able to go to a treatment program of his choice." "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Crocco*, 2014-NMSC-016, ¶ 12, 327 P.3d 1068 (internal quotation marks and citation omitted). "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* ¶ 14 (internal quotation marks and citation omitted). The burden of establishing a prima facie case of ineffective assistance of counsel rests with the defendant. *Id.*

**{18}** In this case, Defendant's arguments are sparse, and he does not adequately cite the record to support his arguments. As such, Defendant has failed to establish a prima facie case of ineffective assistance and we decline to address his arguments further. *See* Rule 12-318(A)(4) NMRA (describing that an argument must contain proper citations to "authorities, record proper, transcript of proceedings, or exhibits relied on"). However, Defendant may file a habeas petition where he can seek to develop an adequate record. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517 (noting appellate courts prefer ineffective assistance of counsel claims to "be brought up under a habeas corpus proceeding so that the defendant may actually develop the record").

**CONCLUSION**

**{19}** We affirm the district court's finding that Defendant violated his probation, but we reverse the disposition of the probation violation and remand for a new disposition hearing during which Defendant may exercise his right to allocution.

**{20} IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**