This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38586**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FRANCISCO MATTESON a/k/a
FRANCISCO LACAVA MATTESON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Francisco Matteson appeals his convictions for two counts of first-degree criminal sexual penetration (CSP) (NMSA 1978, § 30-9-11(D)(1) (2009) (child under thirteen)), and one count of attempted second-degree criminal sexual contact of a minor (CSCM) (NMSA 1978, §§ 30-9-13(B)(1) (2003), 30-28-1 (1963)). Defendant argues that the district court committed three evidentiary errors at trial: (1) admitting testimony about text messages sent to the victim without a proper foundation that Defendant was the sender; (2) admitting impermissible propensity evidence in the form

of text messages Defendant sent to the victim's mother; and (3) admitting impermissible propensity evidence about an uncharged act of sexual abuse against the victim. Additionally, in response to an order for supplemental briefing, Defendant argues, and the State concedes, that the district court did not afford Defendant the opportunity to allocute prior to sentencing. We affirm Defendant's convictions, but we reverse his sentence and remand for resentencing because we agree Defendant's right to allocution was violated.

**BACKGROUND**

**{2}** The charges in this case stem from allegations made by K.D., the daughter of Defendant's ex-girlfriend, Valerie. About a year after Defendant and Valerie met, the couple began living together, along with K.D., who was nine at the time, and K.D.'s younger sister. Defendant and Valerie's relationship lasted approximately five years. It ended when Valerie learned that Defendant had an intimate relationship with an employee at Valerie's business, which Defendant helped run, and that Defendant had fathered a child with this person. K.D. testified at trial about three acts of sexual abuse for which Defendant was charged.[1] The acts occurred during the summers before and after K.D.'s sixth grade school year. K.D. testified that on one occasion, Defendant tried, but failed, to touch her vaginal area; that on another occasion, he digitally penetrated her vagina; and that on a third occasion, he performed cunnilingus on her. K.D. also testified about a fourth, uncharged incident of sexual abuse in which Defendant slid his penis down her back. When K.D. eventually disclosed the abuse to her adult sister, the sister informed Valerie; Valerie confronted Defendant, and he denied the allegations. We introduce additional facts as necessary within our analysis of the issues.

**DISCUSSION**

**I.      The District Court Did Not Abuse Its Discretion by Allowing K.D. to Testify About Text Messages She Believed Defendant Had Sent**

**{3}** Over defense counsel's objection, K.D. testified about the contents of text messages she believed Defendant had sent her on the day after she disclosed the sexual abuse. Defendant contends the admission of K.D.'s testimony was erroneous because there was an insufficient foundation establishing that Defendant was the sender.[2]

---

1Defendant was indicted on three counts of first-degree CSP and one count of attempted second-degree CSCM. The district court directed a verdict on one of the CSP charges because K.D.'s testimony supported only two instances of penetration.

2Following K.D.'s testimony, the State also questioned K.D.'s adult sister about the same series of text messages. Defendant on appeal appears to rely, at least to some extent, on the sister's testimony in arguing the district court erred. At trial, however, Defendant made no objection to this testimony. We, accordingly, do not consider any claim of error as to the sister's testimony. *See State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

**{4}** We review the admission or exclusion of evidence for abuse of discretion and "will not disturb the exercise of that discretion absent a clear abuse." *State v. Mercer*, 2005-NMCA-023, ¶ 6, 137 N.M. 36, 106 P.3d 1283. "[W]here the district court admits evidence lacking a foundation, it abuses its discretion." *State v. Martinez*, 2020-NMCA-043, ¶ 25, 472 P.3d 1241. When a state's witness contends that the person making a phone call, or, as in this case, sending a text message, is the defendant, the state must "make a threshold showing of authentication that [the d]efendant was the caller [or sender]." *State v. Hernandez*, 2009-NMCA-096, ¶ 9, 147 N.M. 1, 216 P.3d 251; *see id.* ("To meet this threshold level of admissibility, the [s]tate must present authentication or identification evidence 'sufficient to support a finding that the matter in question is what its proponent claims.'" (quoting Rule 11-901(A) NMRA)); *see also, e.g.*, *State v. Garcia*, 1990-NMCA-065, ¶ 26, 110 N.M. 419, 796 P.2d 1115 (holding that the identity of a caller is a preliminary question to be determined by the district court under Rule 11-104 NMRA).

**{5}** In assessing whether the state has made a sufficient showing, the district court may consider "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," Rule 11-901(B)(4), as well as testimony from a witness with knowledge "that an item is what it is claimed to be," Rule 11-901(B)(1). Once this threshold showing is met, it is for the jury, under Rule 11-104(B), to determine the ultimate question of identity. *See Hernandez*, 2009-NMCA-096, ¶ 9; *see also State v. Martinez*, 2007-NMSC-025, ¶ 20, 141 N.M. 713, 160 P.3d 894 ("Under [the Rule 11-104(B)] standard, the trial court does not determine whether the conditional fact has been proven by a preponderance of the evidence. Instead, the court simply examines all the evidence in the case and decides *whether the jury could reasonably find* the conditional fact by a preponderance of the evidence." (alteration, omission, internal quotation marks, and citation omitted)).

**{6}** Contrary to Defendant's contention that the State "offer[ed] little more than K.D.'s hunch" that Defendant had sent the text messages, we conclude the evidence was sufficient to meet the threshold for admissibility. Although the text messages came from an unknown number, K.D. testified that the messages "very much sounded like [Defendant]," whom she had lived with for about five years, and the text messages referred to Defendant as "Papa," a special name K.D. used for Defendant. The messages spoke of how K.D. was ruining Defendant's family with her allegations, and consistent with statements Defendant made to K.D. the prior evening, urged K.D. to stop lying, claiming that if she did not, Defendant would be harmed. Lastly, K.D. testified that at the time she received the text messages, she had discussed the abuse with only Defendant, her mother, and her adult sister.

**{7}** We conclude the foregoing evidence—including the use of distinctive terminology in the text messages, as well as the inclusion of information in the messages that only Defendant, or K.D. and her close family members, knew—was sufficient for the district court to determine that the jury could find by a preponderance of the evidence that Defendant authored the messages. *See State v. Jackson*, 2018-NMCA-066, ¶¶ 16, 18, 429 P.3d 674 (concluding that text messages were authenticated where, among other

things, the messages contained nicknames for the defendant and there was testimony they were consistent with the defendant's in-person responses); *see also State v. Jesenya O.*, 2022-NMSC-014, ¶ 28, 514 P.3d 445 (providing that authentication is sufficient where the content and substance of messages evince "distinctive characteristics" and such content is known or knowable by only a handful of people). That the text messages could have originated with the mother of Defendant's child, a possibility proposed by Defendant, does not negate their admissibility. *See State v. Candelaria*, 2019-NMCA-032, ¶ 55, 446 P.3d 1205 (considering the defendant's conjecture that he was not the author of a letter "went to the weight of the evidence, not its admissibility"); *Jackson*, 2018-NMCA-066, ¶ 19 ("[The d]efendant's argument that the text messages . . . could have been authored . . . by someone else, does not negate the admissibility of the text messages, but rather presents an alternative to the [s]tate's suggested inferences.").

**{8}**    In sum, we reject Defendant's argument that the district court abused its discretion by allowing K.D. to testify about the text messages she believed Defendant had sent her.

## II.    The District Court Did Not Abuse Its Discretion by Admitting Defendant's Text Messages to Valerie

**{9}**    Defendant next argues that the district court abused its discretion by admitting into evidence text messages Defendant sent to Valerie shortly before and following his indictment. He contends that the evidence was inadmissible under Rule 11-404(B) NMRA; he further contends that, even if it was admissible, it should have been excluded under Rule 11-403 NMRA as unfairly prejudicial.

**{10}**    We review a district court's decision to admit evidence under Rule 11-404(B) and Rule 11-403 under the same standard we did for the previous issue: abuse of discretion. *See State v. Bailey*, 2017-NMSC-001, ¶ 12, 386 P.3d 1007. Such an abuse occurs only where the ruling is clearly untenable or not justified by reason. *Id.* Rule 11-404(B)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such other-act evidence, however, may be permitted for purposes other than showing propensity, e.g., for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). Nevertheless, even if such evidence is admissible under Rule 11-404(B), it should not be admitted "if the probative value related to its permissible purpose is substantially outweighed by the factors in Rule 11-403," one of which is unfair prejudice. *State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828.

**{11}**    In the text messages at issue here, Defendant alternated between angrily confronting Valerie, pleading with her not to cooperate with the criminal investigation, and threatening retaliation. For instance, in Exhibit 1, Defendant called Valerie a "fucking pi[e]ce of shit" after learning that she was cooperating with the authorities by

giving them his computer, and he insinuated that he would end up with Valerie's house and car. In Exhibit 2, Defendant claimed to have "lost it all" and pleaded with Valerie, "Please before it[']s too late stop this." In Exhibit 3, Defendant told Valerie that she, rather than he, would "be the one behind bars" for filing a false police report. In Exhibit 4, Defendant told Valerie that a police report was "bullshit" and that it was "a shame to drag that sweet girl into [her] bullshit." Finally, in Exhibit 5, Defendant asked Valerie to talk "one last time" before things "[got] out of control." When Valerie did not respond, Defendant called her a "fat bitch" and a "vindictive pi[e]ce of shit," threatened her with a long process in which he would ensure that she was dragged into court every day until she told the truth, and claimed that she was "going to pay." Over Defendant's objection, the district court admitted the text messages on the ground that they showed "some level of consciousness of guilt."

**{12}** Defendant maintains on appeal that the text messages were inadmissible under Rule 11-404(B) because they "had no probative value other than to show that [Defendant] was angry at [Valerie], made demands on her, and wanted the charges dropped." Further, Defendant contends the text messages are consistent with an innocent person's outrage at being falsely accused. The State argues that the text messages were admissible under *State v. Ruiz*, 1995-NMCA-007, 119 N.M. 515, 892 P.2d 962, as evidence of Defendant's consciousness of guilt. We agree with the State.

**{13}** This Court held in *Ruiz* that evidence from which a jury could infer a defendant was attempting to dissuade a witness from testifying, or otherwise to suppress evidence, was admissible under Rule 11-404(B) as evidence showing consciousness of guilt. *See Ruiz*, 1995-NMCA-007, ¶ 9 (holding that threats and physical intimidation related to the defendant's attempt to dissuade a witness from testifying were admissible as "a specific application of the rule that evidence showing consciousness of guilt is admissible"); *see also State v. Altgilbers*, 1989-NMCA-106, ¶ 59, 109 N.M. 453, 786 P.2d 680 (holding that evidence of the defendant's uncharged physical abuse was admissible under Rule 11-404(B) given that the jury "could infer [from it] that his purpose was to dissuade his family from reporting his offenses"). Here, Valerie testified that she understood the text messages as Defendant "trying to manipulate [her]" and "trying to get [her] to back down." We agree with these inferences and, accordingly, conclude that the text messages were admissible under Rule 11-404(B) as betraying consciousness of guilt. As for Defendant's contention that the text messages might instead be consistent with an innocent person's outrage, he cites no authority for the idea that evidence supporting competing inferences is inadmissible as proof of one such inference. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and . . . , given no cited authority, we assume no such authority exists."). And, indeed, it is for the jury to resolve any conflict between inferences that may be drawn from the evidence. *See State v. Tapia*, 2015-NMCA-048, ¶ 12, 347 P.3d 738.

**{14}** We furthermore reject, as undeveloped, Defendant's argument predicated on Rule 11-403. In his brief in chief, Defendant briefly points to the general rule that evidence admissible under Rule 11-404(B) may nonetheless be excluded under Rule

11-403 as unfairly prejudicial. Defendant then, without any analysis, baldly asserts that the district court abused its discretion under Rule 11-403 because "[t]he text messages in [Defendant's] case had precisely the effect Rule 11-403 is intended to prevent." We decline to review such a conclusory argument. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (declining to review an argument based on Rule 11-403 where the argument neither explained how the rule applied nor was sufficiently developed for review).

**{15}** In sum, we reject Defendant's argument that the district court abused its discretion by admitting the text messages Defendant sent Valerie.

### III.     Any Error in the Admission of an Uncharged Act of Sexual Abuse Was Harmless

**{16}** After K.D. testified about the three incidents of sexual abuse for which Defendant was charged, the district court, over objection, allowed K.D. to testify about another incident that occurred when K.D. was over the age of thirteen and for which Defendant was not charged. The entirety of K.D.'s testimony about that incident consisted of the following:

> That night, he was touching me with his hands, and then had pulled down his own waistband—because he always wears sweats—and I felt his penis along my back, and he slowly tried to draw it down to my vagina. I very much moved away. I could not freeze at that time, in fear of what would happen next, and I moved away.

The State did not ask K.D. about the incident again; nor did the State mention or reference the incident in its closing argument.

**{17}** Defendant argues on appeal that the district court abused its discretion in allowing evidence of the uncharged act of sexual abuse and further argues that the error was not harmless. We deem it unnecessary to examine the merits of Defendant's claim of error here because, even assuming the admission of this evidence was error, we hold that the admission was harmless.

**{18}** "Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. A nonconstitutional evidentiary error, such as the one assumed here to exist, "is harmless when there is no reasonable probability the error affected the verdict." *Id.* ¶ 36 (emphasis, internal quotation marks, and citation omitted)). A defendant bears the initial burden of demonstrating that they were prejudiced by the error. *State v. Astorga*, 2015-NMSC-007, ¶ 43, 343 P.3d 1245. In determining the effect of an evidentiary error, we look to all the circumstances surrounding the error. *Tollardo*, 2012-NMSC-008, ¶ 43. We may consider the source of, and emphasis placed on, the error, the importance of the erroneously admitted evidence to the state's case, and whether the evidence was cumulative or introduced new facts. *Id.* We may also consider "the other, non-

objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial." *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215.

**{19}** Here, the testimony regarding the uncharged incident was limited and came after the jury had already heard about the three other incidents of sexual abuse that formed the basis of the charges. The uncharged act was hardly important to the State's case, as the State did not reference, let alone emphasize, it again during the remainder of the trial or in closing argument. And, although Defendant claims the evidence "was important in portraying [Defendant] as unrepentant," the State correctly points out that Defendant's citation for this proposition does not support his contention because it involves a bench conference held outside the presence of the jury.

**{20}** Fundamentally, Defendant's harmfulness argument hinges on his reliance on *State v. Duran*, 2015-NMCA-015, 343 P.3d 207, for the proposition that the evidence of the uncharged act "went directly to the primary issue of credibility." We think the facts here are qualitatively different from *Duran*. In *Duran*, the improper evidence consisted of a forensic interviewer's lay opinion regarding delayed reporting of sexual abuse. *Id.* ¶¶ 14-18. *Duran* deemed the improper evidence important because "it was designed to lead the jury to infer that [the v]ictim's delay in disclosing the incident was justified—an inference that would support [the v]ictim's credibility." *Id.* ¶ 24. Because the evidence directly pertained to "the primary issue of credibility in a sexual abuse case," this Court held there was a reasonable probability it influenced the jury. *Id.* ¶ 26.

**{21}** Unlike in *Duran*, the evidence at issue here—involving brief testimony about a fourth incident of abuse in the same vein as the charged conduct—did little, if anything, to bolster K.D.'s credibility or denigrate Defendant's. As for K.D.'s credibility, the State never referenced her testimony about the uncharged act or asked to jury to draw any inference from it; furthermore, K.D.'s testimony about the charged conduct was clear and detailed, such that her additional testimony about the uncharged conduct was unnecessary to make her account believable. *See State v. Marquez*, 2021-NMCA-046, ¶¶ 33, 34, 495 P.3d 1150 (concluding that erroneously admitted evidence of uncharged conduct was not harmless where the victim's testimony about the charged conduct was a blur, while the testimony about the uncharged conduct was specific and introduced new, concrete facts; and where the state emphasized the uncharged conduct in closing argument to corroborate the victim's account), *cert. granted* (S-1-SC-38502, Apr. 23, 2021). As for Defendant, he fails to explain how K.D.'s brief testimony about the uncharged conduct harmed his credibility, at least beyond the harm he had already inflicted himself. In particular, Defendant admitted to the jury that he had prior convictions for crimes involving dishonesty (i.e., bank fraud, mail theft, forgery, and conspiracy to commit forgery). And, although Defendant would not admit that he lied to Valerie about fathering a child with another woman, he only disclosed that fact when confronted by Valerie. In short, we fail to see how evidence of the uncharged act of sexual abuse had much, if any, bearing on K.D.'s or Defendant's credibility.

**{22}** All considered, we conclude any error in admitting the uncharged act of sexual abuse was harmless, and we reject Defendant's claim of error on this basis.

## IV. The Allocution Violation Merits Reversal of Defendant's Sentence and Remand for Resentencing

**{23}** In conducting our review of the record in this case, it appeared Defendant's right to allocution had been violated. Accordingly, we asked the parties to brief this issue to determine whether the case should be remanded for resentencing. *See State v. Cruz*, 2021-NMSC-015, ¶ 30, 486 P.3d 1 ("Although defense counsel did not raise this issue, appellate courts have a responsibility to raise issues sua sponte when it is necessary to protect a party's fundamental rights." (internal quotation marks and citation omitted)). In supplemental briefing, Defendant argued his sentence was invalid because he was denied the right to allocute, and he asked for resentencing on remand. The State conceded the issue.

**{24}** At sentencing, "[i]t is the duty of the court to inform a defendant of his or her right to allocution, and when . . . the district court does not fulfill this duty, the sentence is invalid." *State v. Williams*, 2021-NMCA-021, ¶ 14, 489 P.3d 949, *cert. denied* (S-1-SC-38732). Such an invalid sentence "mandates reversal and resentencing without any inquiry into harm or the like." *State v. Wing*, 2022-NMCA-016, ¶ 28, 505 P.3d 905, *cert. denied* (S-1-SC-39182). At the sentencing hearing in this case, the district court neither informed Defendant of his right to address the court before sentencing nor gave him the opportunity to do so. As a result, Defendant's right to allocution was violated, and his sentence is invalid. *See Williams*, 2021-NMCA-021, ¶ 14. We, accordingly, reverse Defendant's sentence and remand for a new sentencing hearing, at which Defendant is to be advised of his right to address the district court and given the opportunity to do so. *See Tomlinson v. State*, 1982-NMSC-074, ¶¶ 12-13, 98 N.M. 213, 647 P.2d 415.

**CONCLUSION**

**{25}** For the foregoing reasons, we affirm Defendant's convictions, reverse his sentence, and remand for resentencing.

**{26}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**GERALD E. BACA, Judge**