# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-016

Filing Date: December 20, 2021

No. A-1-CA-38763

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

v.

DONALD WING a/k/a
DONALD WING III,

     Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Daylene A. Marsh, District Judge

Certiorari Denied, February 15, 2022, No. S-1-SC-39182. Released for Publication March 22, 2022.

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**ATTREP, Judge.**

**{1}** Defendant Donald Wing III appeals his conviction and sentence for possession of a controlled substance (methamphetamine), in violation of NMSA 1978, Section 30-31-23(A) (2011, amended 2021), following entry of a guilty plea conditioned on his right to appeal the denial of his motion to suppress. Because we conclude Defendant's proximity to the scene of a recent crime, in conjunction with all the surrounding

circumstances, gave rise to reasonable suspicion in this case, we affirm the district court's denial of Defendant's suppression motion. In this appeal, Defendant also contends that we must remand for resentencing because the district court did not afford him the opportunity to allocute prior to sentencing. The State counters that, by entering into a plea and disposition agreement, Defendant waived his right to raise the allocution violation on appeal. We do not agree with the State on this point. We hold that the entry of a valid guilty plea and appellate waiver does not operate to waive the right to appeal an allocution violation that occurred at sentencing. Because the district court did not afford Defendant the right of allocution, we reverse Defendant's sentence and remand for resentencing.

## MOTION TO SUPPRESS

**{2}**     As for the district court's suppression ruling, Defendant argues the court erred in concluding that his encounter with law enforcement was consensual and in alternatively concluding that the encounter, if nonconsensual, was supported by reasonable suspicion. Assuming for purposes of this opinion that Defendant indeed was seized at the inception of the encounter, we conclude that reasonable suspicion supported the stop of Defendant, and we affirm the district court's denial of his suppression motion on this basis. *Cf. State v. Ortiz*, 2009-NMCA-092, ¶¶ 21, 49, 146 N.M. 873, 215 P.3d 811 (observing that this Court may uphold a district court's decision to dismiss charges on any of the grounds underlying its decision).

## I.     Background

**{3}**     While on patrol in his marked vehicle, at around 1:15 a.m. on a cold January day, Farmington Police Officer Matthew Burns observed at least two individuals in an empty lot appearing to dump a large piece of trash from the back of a truck. Officer Burns testified that there were numerous issues with this lot, including unwanted subjects and people dumping trash there. Upon seeing the truck in the lot, Officer Burns turned his vehicle around and drove in the direction of the street where he believed he saw the truck traveling. By the time Officer Burns got to the street, the truck was gone, but Defendant was there walking a bicycle. Without activating his patrol lights or telling Defendant to stop, Officer Burns approached Defendant and asked him about the activity in the lot. Defendant immediately admitted to dumping trash there.

**{4}**     Officer Burns estimated that between when he saw the truck on the lot and when he came in contact with Defendant, only a minute or two had passed; he also estimated that the distance between Defendant and the lot was "pretty close," roughly 100 yards. Defendant was the only person around at that time, and Officer Burns testified that it was unusual for anyone to be out, given it was a cold, January morning. When asked if he specifically saw Defendant or his bicycle, which had distinctive lights through the spokes, on the lot, Officer Burns answered that it was dark and he could see a couple subjects but he did not provide any description of the subjects and could not say whether Defendant was one of them. Officer Burns further stated that he did not recall seeing the bicycle on the lot because he was focused on the truck at the time.

**{5}** After obtaining Defendant's name and date of birth, Officer Burns learned of an outstanding warrant for Defendant's arrest, and he placed Defendant under arrest. Prior to being booked at the local detention center, Defendant was searched and methamphetamine and drug paraphernalia were found on Defendant's person; this discovery led to the charges in this case. Defendant moved to suppress both the evidence found on his person and a statement he made when officers discovered the methamphetamine. Defendant's motion alleged that he "was seized . . . when Officer . . . Burns saw [Defendant] walking his bicycle and began to question him about what he was doing in the dirt lot" and that this seizure was unconstitutional because Officer Burns lacked reasonable suspicion. The State's written response to the motion, as well as the parties' presentations to the district court at the suppression hearing, focused on whether reasonable suspicion existed to link Defendant to the trash dumping.

**{6}** After taking the matter under advisement, the district court entered a written order denying Defendant's motion on alternative grounds. The court first ruled that Defendant's constitutional rights were not implicated because Officer Burns had not seized Defendant prior to his admission that he dumped trash in the lot. Alternatively, acknowledging the State effectively conceded that a seizure occurred, the district court ruled that the seizure of Defendant, prior to his admission, was supported by reasonable suspicion. Defendant appeals the district court's denial of his suppression motion, pursuant to his conditional plea.

## II. Because Reasonable Suspicion Supported the Stop of Defendant, We Affirm the Denial of Defendant's Suppression Motion

**{7}** Defendant makes numerous contentions directed at explaining why the district court erred in concluding that Defendant's initial encounter with Officer Burns was consensual and therefore not a seizure. Because we agree with the district court's alternative ruling—i.e., that the stop of Defendant was supported by reasonable suspicion—we need not and do not address Defendant's arguments about the encounter being nonconsensual.

## A. Standard of Review

**{8}** Defendant argues that under both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution, his seizure was unreasonable.[1] *See Yazzie*, 2016-NMSC-026, ¶ 17 ("The United States and the New Mexico Constitutions provide overlapping protections against unreasonable searches and seizures." (alteration, internal quotation marks, and citation omitted)). It is well established that "a police officer may detain an individual in investigating potential

---

1Defendant, however, does not assert that the New Mexico Constitution affords him greater protection than the United States Constitution. In light of this and because our courts "have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop," we apply the same reasonable suspicion standard under both the state and federal constitutions. *State v. Yazzie*, 2016-NMSC-026, ¶ 38, 376 P.3d 858.

criminal activity where the officer has formed a reasonable suspicion the individual is breaking, or has broken, the law"—such detention is not constitutionally unreasonable. *State v. Salazar*, 2019-NMCA-021, ¶ 12, 458 P.3d 546 (internal quotation marks and citation omitted).

{9} "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* (internal quotation marks and citation omitted). "The level of suspicion required for an investigatory stop is considerably less than proof of wrongdoing by a preponderance of the evidence." *State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted).

{10} Because Defendant does not challenge the district court's factual findings, whether reasonable suspicion supported the stop is a legal question we review de novo. *See Yazzie*, 2016-NMSC-026, ¶ 15. "On appeal, we must review the totality of the circumstances and must avoid reweighing individual factors in isolation." *State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186. In doing this, we view the facts "in a manner most favorable to the prevailing party," indulge "all reasonable inferences in support of the court's decision," and disregard "all inferences or evidence to the contrary[.]" *State v. Werner*, 1994-NMSC-025, ¶ 10, 117 N.M. 315, 871 P.2d 971 (internal quotation marks and citation omitted).

## B. Defendant's Proximity to the Scene of a Recent Crime, in Conjunction With All the Surrounding Circumstances, Gave Rise to Reasonable Suspicion

{11} Defendant does not contend Officer Burns lacked reasonable suspicion that trash had been illegally dumped in the lot. Instead, Defendant contends the officer lacked reasonable suspicion that Defendant, in particular, was involved in this offense. Thus, our inquiry is limited to whether, based on the totality of the circumstances, Officer Burns' suspicion that Defendant was involved in the illegal dumping was reasonable. The district court ruled that it was. Defendant on appeal makes several arguments why this was error, chief among them that Officer Burns relied exclusively on Defendant's proximity to the scene of the crime, which Defendant contends was insufficient to form a reasonable suspicion.

{12} In advancing this argument, Defendant does not contend proximity to the scene of a recent crime is irrelevant when assessing the reasonableness of a stop. Any such contention would be contrary to precedent. When viewed in conjunction with all the circumstances known to an officer, proximity to the scene of a recent crime may prove significant in determining the reasonableness of a suspicion. *State v. Watley*, 1989-NMCA-112, 109 N.M. 619, 788 P.2d 375, illustrates this point. In *Watley*, the officer received a report in the early morning hours of a rape in the immediate area he was

patrolling. *Id.* ¶ 15. The only additional facts known to the officer were that the suspect was Hispanic and there was a person wearing a ski mask running north on a nearby street. *Id.* The officer then stopped the defendant, who was traveling north in a truck on the nearby street and was the only one around. *Id.* Even though the defendant did not match the minimal description known to the officer (i.e., the defendant was not Hispanic, was not wearing a ski mask, and was not on foot), this Court concluded the circumstances supported the stop. *Id.* ¶¶ 17-18. *Watley* considered it significant that "[the] defendant was stopped in the early morning hours a short distance from the area where an alleged crime had been committed and where a man had been seen running toward the vicinity where [the] defendant was stopped" and that the defendant was the only person in the area. *Id.* ¶¶ 17-18. Based on these facts, this Court held the officer "could reasonably have concluded that [the] defendant may have been involved in the commission of the reported offense."[2] *Id.* ¶ 17.

**{13}** In other cases, this Court likewise has concluded that proximity to the scene of a recent crime—in conjunction with appropriate circumstances—may support reasonable suspicion. *See, e.g.*, *State v. Lovato*, 1991-NMCA-083, ¶¶ 2-4, 11-14, 112 N.M. 517, 817 P.2d 251 (concluding there was reasonable suspicion supporting a vehicular stop to investigate a reported drive-by shooting where "the incident . . . occurred around midnight, the car . . . met the general description radioed by the police dispatcher, and there was no other vehicular traffic in the area"); *State v. Jimmy R.*, 1997-NMCA-107, ¶¶ 2-3, 124 N.M. 45, 946 P.2d 648 (concluding the officer had reasonable suspicion for an investigative stop because the subjects, who alone were in the vicinity of reported criminal activity, began walking away when the officer drove up); *State v. Ortiz*, 2017-NMCA-006, ¶¶ 14-15, 387 P.3d 323 (concluding the officer had reasonable suspicion to stop the defendant where, notwithstanding the lack of suspect's description, the defendant was the only person in the vicinity of a recent report of suspicious activity, at an hour "when it [was] objectively reasonable to infer there were no other individuals present and that the business was not open[,]" and the defendant's behavior was suspicious given the time of day and location).[3]

---

2After reaching this conclusion, the Court in *Watley* went on to discuss facts the officer observed *after* the stop. *See* 1989-NMCA-112, ¶ 19. Such facts, however, cannot be used to support the lawfulness of a stop, so we give them no consideration. *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 ("Reasonable suspicion must exist at the inception of the seizure. The officer cannot rely on facts which arise as a result of the encounter." (citation omitted)).

3Commentators and numerous other courts have reached similar conclusions. *See, e.g.*, 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.5(h) (6th ed. 2021) (discussing, in the context of a stop related to recent criminal activity in the area, what combination of facts and circumstances will suffice to establish a "reasonable possibility" that the person stopped committed the offense, and identifying as considerations "(1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation"); *United States v. Goodrich*, 450 F.3d 552, 561-63 (3d Cir. 2006) (upholding the validity of the stop, notwithstanding imprecise description of the suspect, because other relevant factors, including (1) the reputation of the area for criminal activity of the type

**{14}** In contrast to *Watley*, and similar cases cited above, *State v. Garcia*, 2009-NMSC-046, 147 N.M. 134, 217 P.3d 1032, upon which Defendant principally relies,[4] illustrates the type of situation in which proximity to the scene of a recent crime proves insufficient in light of the totality of the circumstances. In *Garcia*, our Supreme Court determined that "seizing [the d]efendant because he was near the address where the yet-uninvestigated 'possible domestic' had occurred was unreasonable because the officer had no articulable, particularized suspicion that [the d]efendant was breaking or had broken the law." 2009-NMSC-046, ¶ 44. The Court reached this conclusion for two reasons. First, "the officer had no information that a crime had been or was being committed[,]" *id.* ¶ 45—a situation not at issue in this case, given Officer Burns' direct observation of illegal dumping. Second, "even had the officer known that a crime had been committed," the Court in *Garcia* observed, "the fact that [the d]efendant was merely walking in the vicinity was not *necessarily* sufficient to support a reasonable suspicion that [the d]efendant was the responsible party." *Id.* ¶ 46 (emphasis added). The facts—or more aptly the absence thereof—that made the defendant's proximity to the scene of a crime insufficient in *Garcia* included that the officer had no description of the suspect and the defendant was merely on the same block as the supposed crime at 7:00 p.m., a time when it is not unusual for people to be walking in the streets. *Id.* Given these circumstances, the Court concluded, "[t]he connection between [the d]efendant and any crime that may have been in progress was too attenuated to constitute reasonable suspicion." *Id.*

**{15}** With the foregoing precedents in mind, we turn to the totality of the circumstances here. The specific articulable facts and rational inferences place this case closer to the circumstances in *Watley* than those in *Garcia*, and we similarly conclude that they gave rise to reasonable suspicion. In this case, around 1:15 a.m. on a January day, Officer Burns witnessed at least two individuals appearing to dump trash from the back of a truck in an empty lot that is known for exactly this type of criminal activity. *See State v. Martinez*, 2020-NMSC-005, ¶ 36, 457 P.3d 254 ("[W]here an

suspected; (2) the time of day; (3) the geographical and temporal proximity of the stop to the scene of the alleged crime; and (4) the number of persons in the area, "tend[ed] to more narrowly define the universe of potential suspects and thereby constrain police discretion"); *People v. Brown*, 353 P.3d 305, 316-19 (Cal. 2015) (concluding, notwithstanding lack of suspect description, that reasonable suspicion existed where the deputy arrived at the scene of a fight within three minutes of dispatch; it was 10:30 p.m.; the defendant was the only person, and in the only vehicle, near the scene; and the defendant first drove away from, then drove back toward, the scene); *State v. Johnson*, 2011 SD 10, ¶¶ 2, 11, 13-14, 795 N.W.2d 924 (per curiam) (concluding that reasonable suspicion existed where it was early morning; the officer knew that a casino had been robbed seconds beforehand; the defendant was stopped four blocks from the casino; there were no other vehicles moving away from the casino; and the location of the vehicle was on a logical escape route).

4On appeal, Defendant additionally relies on *State v. Eric K.*, 2010-NMCA-040, 148 N.M. 469, 237 P.3d 771. *Eric K.* appears to be another example of a situation where proximity to the scene of a recent crime proves insufficient in light of the totality of the circumstances. Unfortunately, the opinion contains little explanation why the circumstances of that case proved insufficient, so it is difficult to glean much on this point from *Eric K.* We do, however, observe that *Eric K.* involved numerous circumstances not at play in this case—e.g., the report was from a 911 caller (the identity of whom was unknown); the specific location of the alleged crime was unknown; it was mid-afternoon; and other people were in the vicinity at the time of the stop. *Id.* ¶¶ 2-5. Given these circumstances, we can appreciate why this Court concluded that reasonable suspicion did not exist. *See id.* ¶¶ 23-24.

officer is patrolling an area known as a site where a particular type of crime is prevalent and stops an individual on suspicion that he or she has potentially committed the very crime that occurs with frequency in that area, then the assertion that the area in question is a high-crime area is quite acceptable if not essential to understanding and judging the merits of the officer's suspicion."). Although Officer Burns drove in the direction he believed he saw the truck travel, by the time he arrived there, only about one to two minutes later, the truck was gone, and Defendant was the only individual in the vicinity.[5] The stop occurred in "pretty close proximity" to the illegal dumping, about 100 yards from the lot. It was unusual for anyone to be out given the time of day and the conditions. Considering all these circumstances together—that Defendant was in close temporal and physical proximity to the scene of a crime, known for exactly the same type of crime suspected, that Defendant was found in the area where the truck involved in the crime was seen leaving, that Defendant was the only individual in the vicinity, and that it was late at night and unusual for anyone to be out—Officer Burns reasonably could have concluded that Defendant, in particular, was involved in the illegal dumping he had just witnessed. *See, e.g.*, *Watley*, 1989-NMCA-112, ¶¶ 17-18 (concluding that similar circumstances gave rise to reasonable suspicion); *Goodrich*, 450 F.3d at 561-63 (same). Given the circumstances in their totality, this is not the type of situation, as Defendant suggests, where proximity to the scene of a recent crime proves insufficient.

**{16}** Nor are Defendant's remaining arguments in support of a contrary conclusion persuasive. Defendant contends that Officer Burns did not see him or his distinctive-looking bicycle on the lot and that there otherwise was nothing directly linking Defendant to the illegal dumping. Relatedly, Defendant contends that it was entirely possible that he just happened to be walking in the area at the time the illegal dumping occurred. These arguments misapprehend the level of certainty necessary to support an investigative detention. While "particularized suspicion," based on all the circumstances known to the officer, that the individual detained is breaking or has broken the law is necessary to render the stop reasonable, officers "need not limit themselves to their direct observations in developing suspicions, and they need not exclude all possible innocent explanations of the facts and circumstances they observe." *Salazar*, 2019-NMCA-021, ¶ 16 (internal quotation marks and citation omitted); *see also Martinez*, 2020-NMSC-005, ¶ 31 ("The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." (internal quotation marks and citation omitted)). Indeed, "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Yazzie*, 2016-NMSC-026,

---

5The fact that Defendant, when stopped, was traveling on foot and not in the truck, does not make Officer Burns' suspicion unreasonable. *See Watley*, 1989-NMCA-112, ¶¶ 17-18 (upholding stop of vehicle when suspect seen fleeing on foot); *Brown*, 353 P.3d at 309, 318-19 (upholding stop of vehicle even though the officer did not know if suspect was on foot or in vehicle). Officer Burns observed multiple people engaged in illegal dumping; and while it was possible that all involved departed together in the truck, as Defendant surmises, it also was possible that the suspects departed separately or parted ways before Officer Burns reached the street where the truck was seen traveling since, as the district court observed, "it would only take one person to drive the truck away." *See Yazzie*, 2016-NMSC-026, ¶ 33 ("The requirement of reasonable suspicion is not a requirement of absolute certainty[.]" (alteration, internal quotation marks, and citation omitted)); *Werner*, 1994-NMSC-025, ¶ 10 (recognizing that all reasonable inferences in support of the district court's decision should be indulged).

¶ 33 (internal quotation marks and citation omitted); *see also id.* ¶ 22 (providing that "where conduct justifying the stop was ambiguous and susceptible of an innocent explanation, officers could detain the individuals to resolve the ambiguity" (alteration, omission, internal quotation marks, and citation omitted)); *Salazar*, 2019-NMCA-021, ¶¶ 3, 5-6, 19 (concluding that a stop was reasonable notwithstanding that the officer lost sight of the vehicle observed evading a DWI checkpoint and was uncertain whether the vehicle stopped was the target vehicle).

**{17}** As we have discussed, there was a sufficient probability that Defendant was involved in the illegal dumping, thereby making the stop of Defendant, if any, reasonable. The district court's denial of Defendant's suppression motion is affirmed.

## ALLOCUTION

**{18}** Defendant's second claim of error is that he was denied the right to allocution at his sentencing hearing and, as a result, is entitled to resentencing. The State does not disagree that Defendant's right to allocution was violated. Instead, the State contends that Defendant's entry into a plea and disposition agreement bars all but claims of jurisdictional defects, which, the State contends, allocution errors are not. In response, Defendant argues first that the scope of the appellate waiver in the plea and disposition agreement did not encompass allocution errors and second that the allocution violation is indeed a jurisdictional defect. Because we agree with Defendant's second argument, we address this point only. We conclude that the denial of the right to allocution renders the ensuing sentence unauthorized by statute—a jurisdictional defect that may be appealed notwithstanding the entry of a valid guilty plea and appellate waiver. Because Defendant was denied the right of allocution, we remand for resentencing in this case.

## I.   Background

**{19}** Defendant and the State entered into a plea and disposition agreement in which Defendant agreed to plead guilty to possession of a controlled substance in this case and another case. The State in turn agreed to dismiss the remaining charges in both cases. The plea and disposition agreement contained "[n]o agreement as to sentencing[,]" but the State did not oppose the sentences in the two cases being suspended and run concurrently. In relevant part, the plea and disposition agreement read:

> [D]efendant gives up any and all motions, defenses, objections or requests which [he] has made or raised, or could assert hereafter, to the court's entry of judgment and imposition of a sentence consistent with this agreement. [D]efendant waives the right to appeal the conviction that results from the entry of this plea agreement.

Excepted from this waiver was Defendant's right to appeal the district court's suppression ruling in this case.

**{20}** The district court held a sentencing hearing in the two cases governed by the plea and disposition agreement, as well as in a third case in which Defendant also pleaded guilty to possession of a controlled substance. Only the State, defense counsel, and an individual from treatment court were invited to speak at the hearing. As the individual from treatment court was speaking, Defendant interjected, expressing disagreement with one of the stated assertions. Aside from this, Defendant neither spoke, nor was he ever invited to address the court prior to imposition of the sentence. At the conclusion of the hearing, the district court sentenced Defendant within the statutory maximum punishment. Defendant appealed the judgment and sentence as to this case only; he did not appeal the judgment and sentence as to the other two cases.

## II.    An Allocution Violation Can Be Raised on Appeal Notwithstanding the Entry of a Valid Guilty Plea and Appellate Waiver

**{21}** The question we resolve today is one we consider de novo: whether the denial of the right to allocution is a jurisdictional defect that may be raised on appeal, notwithstanding the entry of a valid guilty plea and appellate waiver. *See State v. Chavarria*, 2009-NMSC-020, ¶ 11, 146 N.M. 251, 208 P.3d 896 (providing that "[q]uestions regarding subject matter jurisdiction are questions of law which are subject to de novo review" (internal quotation marks and citation omitted)). We begin by briefly reviewing the contours of the right to allocution in New Mexico. We then discuss the usual effect of the waiver made in a valid guilty plea and appellate waiver. Recognizing that our Supreme Court has deemed jurisdictional defects—i.e., sentences not authorized by statute—as the only types of sentencing claims that may be raised on appeal in this context, we examine whether allocution violations constitute such defects, and ultimately determine that they do. Our conclusion rests on longstanding principles that a court's sentencing authority derives exclusively from statute; that the Criminal Sentencing Act (the Act), NMSA 1978, §§ 31-18-12 to -26 (1977, as amended through 2020), plainly mandates that the opportunity for allocution be provided at every felony sentencing proceeding; and that a court's failure to afford this right renders the sentence invalid.

## A.    The Right to Allocution in New Mexico

**{22}** The right to allocution in New Mexico has been expansively applied and guardedly protected. "Allocution is defined as the formal inquiry or demand made by the court or clerk to [the] accused at the time for pronouncing sentence as to whether [the] accused has anything to say why sentence should not be pronounced on him." *State v. Setser*, 1997-NMSC-004, ¶ 20, 122 N.M. 794, 932 P.2d 484 (internal quotation marks and citation omitted). The common law doctrine of allocution, also known as allocutus, is codified in the Act and applies to all felony offenses.[6] *See Tomlinson v. State*, 1982-

---

6This Court has extended the right to allocution to a variety of other types of proceedings. *See State v. Williams*, 2021-NMCA-021, ¶ 12, 489 P.3d 949 (probation revocation proceedings), *cert. denied*, 2021-NMCERT-___ (No. S-1-SC-38732, Mar. 31, 2021); *State v. Leyba*, 2009-NMCA-030, ¶ 27, 145 N.M. 712, 204 P.3d 37 (habitual offender proceedings); *State v. Ricky G.*, 1990-NMCA-101, ¶ 13, 110 N.M. 646, 798 P.2d 596 (children's court proceedings). *But see State v. Stenz*, 1990-NMCA-005, ¶¶ 15-21, 109

NMSC-074, ¶¶ 9-12, 98 N.M. 213, 647 P.2d 415 (holding that "Section 31-18-15.1 extends the common law doctrine of allocutus to non-capital felonies as enumerated in Section 31-18-15 and that the trial judge must give the defendant an opportunity to speak before he pronounces sentence"). In modern-day sentencing, allocution serves many important functions. Predominantly, allocution "provid[es] an avenue through which a defendant may ask for mercy based on factors that might not otherwise be brought to the court's attention, and promot[es] safety, certainty and equity in sentencing and the judicial process overall." *Williams*, 2021-NMCA-021, ¶ 9 (internal quotation marks and citation omitted). Even where a defendant's statements can have little or no practical impact on the sentencer—such as where the court must apply habitual offender enhancements—allocution still is required and serves a meaningful purpose. *See Leyba*, 2009-NMCA-030, ¶ 27 (providing that "the opportunity to personally address the sentencer retains both symbolic and practical significance . . . [and] may increase for some defendants the perceived equity of the process" (internal quotation marks and citation omitted)). An allocution violation in New Mexico renders the sentence invalid, resulting in the remedy of reversal and resentencing without inquiry into the harm the violation may have caused. *See Tomlinson*, 1982-NMSC-074, ¶¶ 11-12 (rejecting the argument that an allocution violation is "harmless error" and reasoning that "[t]here is no substitute for the impact on sentencing which a defendant's own words might have if he chooses to make a statement" (internal quotation marks and citation omitted)).

## B. A Valid Guilty Plea and Appellate Waiver Waives a Defendant's Right to Appeal All Non-Jurisdictional Defects and Errors Not Otherwise Reserved

**{23}** We turn next to the effect of a valid guilty plea and appellate waiver on a defendant's right to appeal. As an initial matter, we note that our discussion here applies only when the defendant does not explicitly reserve the matter he or she seeks to raise on appeal. While the New Mexico Constitution confers to an aggrieved party an absolute right to one appeal, *see* N.M. Const. art. VI, § 2, our Supreme Court has determined this right may be waived. In particular, " 'a plea of guilty or nolo contendere, when voluntarily made after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings' " and, according to the Court, " 'also operates as a waiver of statutory or constitutional rights, including the right to appeal' " a conviction and sentence.[7] *Chavarria*, 2009-NMSC-020, ¶¶ 9, 16

---

N.M. 536, 787 P.2d 455 (declining to extend the right to allocution to misdemeanor sentencing proceedings in the absence of a statute or rule establishing the same).

[7]This language in *Chavarria* could be read as stating that a defendant's plea of guilty or nolo contendere *in and of itself*, in the absence of an appellate waiver, has the effect of waiving a defendant's right to appeal the deprivation of all statutory and constitutional rights, even those occurring after entry of the defendant's plea. *See* 2009-NMSC-020, ¶ 9. If such were the case, we might question its accuracy. *See, e.g.*, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights *that occurred prior to the entry of the guilty plea*." (emphasis added)), *cited with approval in State v. Hodge*, 1994-NMSC-087, ¶ 14, 118 N.M. 410, 882 P.2d 1. We, however, have no occasion to consider this matter today. Like *Chavarria*, Defendant's plea and disposition agreement contained an appellate waiver, *see* 2009-NMSC-020, ¶ 3,

(quoting *Hodge*, 1994-NMSC-087, ¶ 14). However, "a plea agreement may not waive the right to challenge on appeal whether a sentence was imposed without jurisdiction." *State v. Tafoya*, 2010-NMSC-019, ¶ 6, 148 N.M. 391, 237 P.3d 693; *see also Chavarria*, 2009-NMSC-020, ¶ 9 (providing that a voluntary guilty plea ordinarily waives a defendant's right to appeal on "other than jurisdictional grounds" (internal quotation marks and citation omitted)); *State v. Trujillo*, 2007-NMSC-017, ¶ 8, 141 N.M. 451, 157 P.3d 16 ("[A] plea of guilty does not waive jurisdictional errors."); Rule 12-321(B)(1) NMRA (providing that the "[s]ubject matter jurisdiction of the trial or appellate court may be raised at any time").

**{24}**    In this case, Defendant does not challenge the validity of his plea and only specifically reserved the right to appeal the district court's suppression ruling. Accordingly, whether Defendant may raise the allocution violation on appeal turns on whether that claim is jurisdictional. *See Chavarria*, 2009-NMSC-020, ¶¶ 9-10. We must therefore examine the meaning of "jurisdictional" in this context, a subject our Supreme Court addressed in *Chavarria*. The Court there explained that "[t]he only relevant inquiry in determining whether the court has subject matter jurisdiction is to ask whether the matter before the court falls within the general scope of authority conferred upon such court by the constitution or statute." *Id.* ¶ 11 (alteration, internal quotation marks, and citation omitted). Further, "a court's sentencing power properly is considered part of its subject matter jurisdiction[,]" *Tafoya*, 2010-NMSC-019, ¶ 7, and "is derived exclusively from statute[,]" *Chavarria*, 2009-NMSC-020, ¶ 12 (internal quotation marks and citation omitted). *See also State v. Frawley*, 2007-NMSC-057, ¶ 6, 143 N.M. 7, 172 P.3d 144 ("No point of law has longer been established in New Mexico than the rule that the prescription of the mode of punishment is pre-eminently a rightful subject of legislation." (alterations, internal quotation marks, and citation omitted)), *superseded by statute on other grounds as recognized by State v. Quintana*, 2021-NMSC-013, ¶ 34, 485 P.3d 215. In particular, the Act "confers authority on the trial court to impose a criminal sentence *in accordance with its provisions*." *Chavarria*, 2009-NMSC-020, ¶ 12 (emphasis added); *accord* § 31-18-13(A) ("[A]ll persons convicted of a crime under the laws of New Mexico shall be sentenced in accordance with the provisions of the [Act.]"). Thus, our Supreme Court explained, whether a sentencing court acts within its jurisdiction in this context hinges on whether the defendant's sentence was authorized by the Act. *Chavarria*, 2009-NMSC-020, ¶¶ 11-12; *see also State v. Sinyard*, 1983-NMCA-150, ¶ 1, 100 N.M. 694, 675 P.2d 426 (providing that the defendant's "claim that the sentence is unauthorized by statute is jurisdictional"); *cf. State v. Wyman*, 2008-NMCA-113, ¶ 2, 144 N.M. 701, 191 P.3d 559 ("A claim that a sentence is illegal and unauthorized by statute is jurisdictional and may be raised for the first time on appeal.").

**{25}**    Applying these principles in *Chavarria*, the Court determined that the defendant's claim of unconstitutional cruel and unusual punishment did not implicate the sentencing court's jurisdiction. 2009-NMSC-020, ¶¶ 13-14. Observing that the defendant's life sentence was explicitly authorized by certain provisions of the Act, the Court concluded that the trial court did not exceed its sentencing jurisdiction and that the defendant's

---

and we assume for purposes of our analysis that this waiver would have been effective in waiving all non-jurisdictional defects at Defendant's sentencing hearing.

claim could not be raised on appeal in light of his guilty plea and appellate waiver. *Id.* ¶¶ 10, 13-14. In contrast, the Court observed, a claim that a sentence was not authorized by the Act—such as, for example, a claim that probation could not be imposed after a sentence was partially suspended, *see Sinyard*, 1983-NMCA-150, ¶ 1—was jurisdictional and accordingly could be raised on appeal, notwithstanding the entry of a guilty plea and appellate waiver. *See Chavarria*, 2009-NMSC-020, ¶ 14; *see also, e.g.*, *Tafoya*, 2010-NMSC-019, ¶¶ 1, 3, 6-8 (affirming that the defendant, by pleading no contest, did not waive the right to appeal a claim that the district court erroneously applied the Earned Meritorious Deductions Act in fashioning his sentence); *Trujillo*, 2007-NMSC-017, ¶¶ 7-9 (treating as a jurisdictional matter the issue of whether a district court could adjudicate habitual offender proceedings, where the original plea and disposition agreement was silent on the question); *State v. Shay*, 2004-NMCA-077, ¶¶ 1, 5-6, 136 N.M. 8, 94 P.3d 8 (reversing imposition of habitual offender enhancements, notwithstanding that the defendant agreed in his plea to the enhancement, because the issue involved "an illegal sentence, which is a jurisdictional issue").

## C. The Violation of a Defendant's Right to Allocution Renders the Ensuing Sentence Unauthorized by the Act

**{26}** To determine whether a sentence rendered without affording a defendant the right to allocution is unauthorized by the Act—and thus presents a jurisdictional defect that may be raised on appeal notwithstanding the entry of a valid guilty plea and appellate waiver—we examine the source and nature of the right in New Mexico.[8] Because the common law doctrine of allocution was extended to all felonies as part of the Act's mandatory sentencing procedures for felony offenses, *see Tomlinson*, 1982-NMSC-074, ¶ 12, we turn first to the Act. Again, the Act provides that "all persons convicted of a crime under the laws of New Mexico *shall be sentenced in accordance with the provisions of the* [*Act*.]" Section 31-18-13(A) (emphasis added). Beyond dictating the terms of imprisonment and maximum fines for given offenses, *see* § 31-18-15(A), (E), the Act also mandates certain procedures a judge must follow at sentencing. As relevant here, under Section 31-18-15.1(A), "[a] district court must hold a sentencing hearing to determine the existence of mitigating or aggravating circumstances that justify a departure of up to one-third from the basic sentence applicable to the crime." *State v. Ayala*, 2006-NMCA-088, ¶ 6, 140 N.M. 126, 140 P.3d 547 (internal quotation marks and citation omitted).[9] This Court has construed Section 31-18-15.1(A) as *imposing a mandatory duty* on the district court to hold such a sentencing hearing, regardless of whether the defendant sought to present mitigating evidence at the hearing or even affirmatively waived the issue below. *See State v. Sotelo*, 2013-NMCA-

---

[8] Relying on an opinion from the United States Supreme Court, the State contends that the denial of the right to allocution does not represent a jurisdictional defect. The State's reliance on United States Supreme Court precedent in this context is not persuasive, given that the right to allocution and the jurisdictional question we examine here are matters of state law.

[9] Since *Ayala*, Section 31-18-15.1 has been amended to conform with the conclusion that a sentencing enhancement based on a judicial finding of aggravating circumstances violates the constitutional right to trial by jury. *See Frawley*, 2007-NMSC-057, ¶¶ 1, 22; *compare* § 31-18-15.1 (1993, amended 2009), *with* § 31-18-15.1. The existence of mitigating circumstances, however, continues to be a matter for the judge. *See* § 31-18-15.1(A)(1).

028, ¶¶ 39, 41, 296 P.3d 1232 ("The plain language of the statute imposes a duty on the court. . . . The statute does not prescribe any prerequisites to the district court's exercise of this duty.").

**{27}** Allocution in turn is a form of mitigation, *id.* ¶ 42, and likewise is mandated by the Act. Nearly forty years ago, our Supreme Court in *Tomlinson* addressed the source and scope of the right to allocution in New Mexico. The Court observed that allocution is a common law doctrine, originally limited to capital offenses. *See Tomlinson*, 1982-NMSC-074, ¶ 5. It further observed that other jurisdictions had both explicitly codified the doctrine in statute or rule and expanded the right to non-capital offenses. *Id.* ¶ 7. And despite the fact that "the right is not specifically set forth by the plain language of Section 31-18-15.1[,]" *Williams*, 2021-NMCA-021, ¶ 10, our Supreme Court similarly concluded that the Legislature intended to incorporate and expand on the right to allocution with its adoption of Section 31-18-15.1. *Tomlinson*, 1982-NMSC-074, ¶ 12. To this end, the Court determined that Section 31-18-15.1(A) "extends the common law doctrine of allocutus to non-capital felonies as enumerated in Section 31-18-15[.]" *Tomlinson*, 1982-NMSC-074, ¶ 12. As a result, Section 31-18-15.1(A), which, as discussed, requires "a sentencing hearing to determine whether aggravating or mitigating circumstances exist, *also require*[s] the trial court to give a defendant an opportunity to speak before the trial court pronounces sentence." *Ricky G.*, 1990-NMCA-101, ¶ 7 (emphasis added).

**{28}** Just as the district court judge has a duty to hold a sentencing hearing to determine the existence of mitigating or aggravating circumstances, *see Sotelo*, 2013-NMCA-028, ¶ 45; § 31-18-15.1(A), so too does the judge have a duty to afford the defendant the right to allocution prior to sentencing, *see Williams*, 2021-NMCA-021, ¶ 14 ("It is the duty of the court to inform a defendant of his or her right to allocution, and when . . . the district court does not fulfill this duty, the sentence is invalid."). *See also Ricky G.*, 1990-NMCA-101, ¶ 7 (same). Failure of the district court to fulfill this duty renders the sentence invalid and mandates reversal and resentencing without any inquiry into harm or the like. *See id.*; *see also Tomlinson*, 1982-NMSC-074, ¶¶ 11-12; *cf. State v. Jones*, 2010-NMSC-012, ¶ 48, 148 N.M. 1, 229 P.3d 474 (providing that since "the trial court lacks the statutory authority to impose an adult sentence on any youthful offender without complying with [NMSA 1978,] Section 32A-2-20 [(2009)]" of the Delinquency Act, "[i]t follows that the parties lack the ability to bargain away the court's own responsibility" (emphasis omitted)).

**{29}** In sum, in prescribing a trial court's sentencing authority under the Act, the Legislature requires courts to afford defendants the right of allocution. *See Tomlinson*, 1982-NMSC-074, ¶ 12. The district court has an affirmative duty to adhere to the Act's prescriptions in this regard. *See Williams*, 2021-NMCA-021, ¶ 14; *Ricky G.*, 1990-NMCA-101, ¶ 7. And failure of the district court to afford a defendant the right of allocution under Section 31-18-15.1 renders the ensuing sentence invalid. *See Tomlinson*, 1982-NMSC-074, ¶¶ 11-12. From all this, we conclude that a sentence imposed without affording the defendant the right of allocution renders the sentence unauthorized by statute—a jurisdictional defect that may be raised on appeal

notwithstanding the entry of a valid guilty plea and appellate waiver. *See Chavarria*, 2009-NMSC-020, ¶ 9.

**{30}** Defendant thus is not precluded from raising the allocution violation on appeal. As stated, the parties do not dispute that Defendant's right to allocution was violated, and our review of the record confirms this. Defendant's sentence in this case is therefore invalid. We accordingly reverse that sentence and remand for a new sentencing hearing, at which Defendant is to be advised of his right to address the district court and given the opportunity to do so.[10] *See Tomlinson*, 1982-NMSC-074, ¶¶ 12-13.

**CONCLUSION**

**{31}** For the foregoing reasons, we affirm the district court's denial of Defendant's motion to suppress but reverse Defendant's sentence and remand for resentencing.

**{32}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**

---

[10]Defendant is entitled to resentencing only in the case before us on appeal. As noted, Defendant did not appeal the other two cases in his judgment and sentence, and we, therefore, do not address the allocution error as it relates to those two cases.