This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41417**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**OSCAR VILLALOBOS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** This matter was submitted to this Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant appeals from the district court's judgment and sentence convicting Defendant of unlawful possession of a firearm pursuant to a jury verdict. On appeal, Defendant contends the district court erred by denying his motion to suppress the evidence, in which he asserted that the officer lacked reasonable suspicion to detain and investigate him. [BIC 4-12] We are not persuaded.

**{3}** "In appropriate circumstances and in an appropriate manner a police officer may approach a person for purposes of investigating possible criminal behavior, even though there is no probable cause to make an arrest." *State v. Barragan*, 2001-NMCA-086, ¶¶ 12-13, 131 N.M. 281, 34 P.3d 1157 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. "An investigatory stop must be supported by a particularized suspicion, based on the totality of the circumstances known to the officer, that the particular individual being stopped is [or has been involved in criminal activity]." *Id.* ¶ 12; *see State v. Wing*, 2022-NMCA-016, ¶ 9, 505 P.3d 905 ("A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." (internal quotation marks and citation omitted)). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Wing*, 2022-NMCA-016, ¶ 9 (internal quotation marks and citation omitted).

**{4}** A ruling on a motion to suppress presents a mixed question of law and fact on appeal. *State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858. Because Defendant does not challenge the district court's findings of fact, we engage in a de novo review of whether the facts, when taken together, give rise to reasonable suspicion. *See Wing*, 2022-NMCA-016, ¶ 10. On appeal, "we view the facts in a manner most favorable to the prevailing party, indulge all reasonable inferences in support of the court's decision, and disregard all inferences or evidence to the contrary." *Id.* (alteration, internal quotation marks, and citation omitted).

**{5}** In the current case, police officers were called to the scene of a reported burglary in progress late at night in mid-December. [BIC 1] One of the reporting officers decided to look in the area of the burglary, knowing that the immediate scene had been cleared and that two unidentified individuals were suspected of breaking into a residence. [BIC 7-8; RP 66] While searching the area of the burglary, the officer observed a vehicle about 50 to 100 yards from the burglarized residence that was parked with its engine running and lights off at about 1:45 a.m. [BIC 1] Suspecting, based on his training and experience, that the vehicle left running may have been a getaway car for the burglary, the officer parked his patrol car behind the vehicle. [BIC 1-2; RP 66] When the officer approached the vehicle, he saw Defendant in the driver's seat and another occupant in the passenger seat. [BIC 1-2] The officer asked the occupants if they were alright, and if they had their identification, then immediately observed that Defendant had a pistol tucked under his right leg with the pistol's handle and hammer sticking out, in the firing position. [BIC 2; RP 67] Defendant made movements to conceal the firearm. [RP 67]

**{6}** The officer ordered Defendant to place his hands on the steering wheel and drew his own firearm in the direction of the occupants of the vehicle. [RP 67] The officer tried to open the driver door, but it was locked. [RP 67] He then ordered Defendant to unlock the door and step out of the vehicle. [RP 67] Defendant complied and the officer handcuffed Defendant, patted him down, recovered an empty holster from Defendant's waistband, and recovered the pistol. [BIC 2; RP 67] The officer discovered that Defendant was a felon unlawfully in possession of a firearm and arrested him on that charge. [RP 67-68]

**{7}** Defendant contends that the officer lacked reasonable suspicion to detain him, asserting that his proximity to the burglary was insufficient to warrant investigation. [BIC 7-12] Defendant relies on *City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 13, 141 N.M. 261, 154 P.3d 76, to argue that he was detained when the officer parked behind Defendant's vehicle and that he lacked reasonable suspicion that Defendant was involved in criminal activity. [BIC 7-8] We are not persuaded that the facts in *Hudson* are sufficiently analogous to the current case to warrant the same result. Relative to reasonable suspicion, the officer in *Hudson* was not investigating any reported burglary or other identified crime when he pulled up behind the defendant's vehicle and shined a spotlight into the defendant's car. *Id.* ¶¶ 2-4. Relative to when a defendant is detained, we stated in *Hudson* that stopping behind the defendant's vehicle and shining the light into the defendant's car was "a show of police authority," *id.* ¶ 13, and we determined, based on the totality of the circumstances, that the defendant was detained when the officer demanded the defendant's identification, *id.* ¶¶ 13-14; *see also State v. Baldonado*, 1992-NMCA-140, ¶ 1, 115 N.M. 106, 847 P.2d 751 ("These consolidated cases raise the question of whether there is a seizure, as a matter of law, whenever the police pull up behind a stopped car and turn on their flashing lights. We hold that there is not.").

**{8}** We are not persuaded that Defendant in the current case was detained when the officer parked his vehicle behind Defendant's parked car. *See State v. Walters*, 1997-NMCA-013, ¶ 26, 123 N.M. 88, 934 P.2d 282 ("Under the record before us, the trial court could reasonably have found that the officer's act of stopping and turning on his emergency lights after [the d]efendant had pulled off the road did not convert the situation into a seizure."). There is no indication that the officer in the current case exhibited a showing of authority akin to that in *Hudson* before the officer noticed the pistol under Defendant's leg, drew his weapon, and ordered Defendant to place his hands on the steering wheel, unlock the door, and step out of the vehicle. [RP 66-67] Thus, the earliest point at which Defendant could have been detained was when the officer asked the occupants of the vehicle for their IDs immediately before the officer saw the pistol. *See Hudson*, 2007-NMCA-034, ¶¶ 13-14 (determining that the defendant was seized when the police officer parked behind the defendant vehicle in a marked car at night, shined his spotlight in the defendant's vehicle, questioned why the occupants were parked on the street, and demanded the defendant's identification). Even assuming that the officer asking Defendant and his passenger if they had identification constituted the moment of detention, we are persuaded that the officer had reasonable suspicion to investigate. *But cf. Walters*, 1997-NMCA-013, ¶ 18 ("[O]ur courts and the

federal courts have held that a police officer may approach an individual, ask questions, and request identification without the encounter becoming a seizure.").

**{9}** We have repeatedly held that "[w]hen viewed in conjunction with all the circumstances known to an officer, proximity to the scene of a recent crime may prove significant in determining the reasonableness of a suspicion." *Wing*, 2022-NMCA-016, ¶ 12; *see id.* ¶¶ 12-13 (citing other New Mexico cases concluding that a defendant's proximity to a reported crime, along with other appropriate circumstances, supports reasonable suspicion). In *Wing*, this Court held that the officer had reasonable suspicion to stop and investigate the defendant where the officer suspected illegal dumping in a dirt lot from a truck that was about 100 yards from where he saw the defendant, the only individual in the area, walking his bicycle away from the lot at about 1:15 a.m. in January. *Id.* ¶¶ 3-4, 15. This Court rejected the defendant's claim that his 100-yard proximity to the suspected illegal dumping was insufficient to support reasonable suspicion, and noted that it was late at night, unusual for anyone to be out, and that Defendant misapprehended the level of certainty that was required of the officer. *Id.* ¶¶ 15-16. In *Wing*, we relied on several other cases in which we found support for reasonable suspicion based on a defendant's lone presence in the vicinity of reported criminal activity at a time of day that gave rise to suspicion. *See id.* ¶¶ 12-13 (citing *State v. Ortiz*, 2017-NMCA-006, ¶¶ 14-15, 387 P.3d 323; *State v. Jimmy R.*, 1997-NMCA-107, ¶¶ 2-3, 124 N.M. 45, 946 P.2d 648; *State v. Lovato*, 1991-NMCA-083, ¶¶ 2-4, 11-14, 112 N.M. 517, 817 P.2d 251; *State v. Watley*, 1989-NMCA-112, ¶¶ 17-18, 109 N.M. 619, 788 P.2d 375)).

**{10}** Analogous to these cases, here, the officer detained Defendant based on his presence in a parked vehicle that was running with its lights off at about 1:45 a.m. within a 50- to 100-yard vicinity of a burglary reported in progress that was being actively investigated at the scene, which led the officer to suspect, together with his training and experience, that it may have been a getaway car for the burglary that was suspected to have involved two people. Thus, the circumstances of Defendant's location are more similar to the cases that support the existence of reasonable suspicion because his proximity was to a *reported* crime, his proximity was sufficiently close to raise suspicion, he was present at a suspicious time, and engaged in an activity that could reasonably be considered related to the reported crime. We are not persuaded by Defendant's reliance on cases that involved a defendant's presence at a location that was known for criminal activity, but where a crime was not actually reported. [BIC 8-9]

**{11}** Based on the foregoing, we hold that the circumstances support reasonable suspicion and affirm the district court's order denying Defendant's motion to suppress.

**{12}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**JACQUELINE R. MEDINA, Judge**